FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 2 0 2022

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CRIMINAL NO. 22-2053 KWR |
| vs. | Counts 1-8, 20-27: 18 U.S.C. § 1343: Wire Fraud; |
| **JOHN LOPEZ**, | |
| Defendant. | Counts 9-19: 18 U.S.C. § 1341: Mail Fraud. |

## INDICTMENT

The Grand Jury charges:

### General Allegations

**At all times material to this indictment:**

1. Personal Money Management Company ("PMMCO") was a corporation, founded in 1996, that, ostensibly, provided financial management services. It served individuals in the District of New Mexico and elsewhere. A large portion of PMMCO's clients were retirees or those close to retirement.

2. Defendant **JOHN LOPEZ** was the president and founder of PMMCO.

3. PMMCO had no employees.

4. **LOPEZ** personally employed a person who served as an office manager, but this person was not an employee of PMMCO.

5. From 2014 continuing on until the date of this indictment, **LOPEZ** held himself out as an investment advisor with considerable expertise who could consistently and substantially beat the market average on return of investments.

6. To various clients and prospective clients, **LOPEZ** represented that he would invest client's money primarily by buying and selling stocks and bonds.

7. From on or about February 21, 2014, until on or about November 9, 2021, **LOPEZ** received approximately $19.4 million from his clients for him to invest as he had represented to them.

8. From on or about February 21, 2014, until on or about November 9, 2021, **LOPEZ** spent approximately $13.3 million of those funds on precious metals, such as gold or silver coins and bars, rather than investing those funds primarily in stocks and bonds as he represented.

9. From on or about February 21, 2014, until on or about November 9, 2021, **LOPEZ** disbursed approximately $6.1 million to PMMCO clients, representing that the funds originated from their individual PMMCO accounts and/or from purported investment gains.

10. According to PMMCO bank records, from on or about November 10, 2021, continuing on until April 22, 2022, **LOPEZ** received approximately $2 million more from clients.

11. According to PMMCO bank records, from on or about November 10, 2021, continuing on until May 13, 2022, **LOPEZ** spent approximately $1 million of those funds on precious metals, such as gold or silver coins and bars.

12. According to PMMCO bank records, from on or about November 10, 2021, continuing on until August 31, 2022, **LOPEZ** disbursed approximately $903,000 to PMMCO clients, representing that the funds originated from their individual PMMCO accounts and/or from purported investment gains.

13. After securing client money, **LOPEZ** periodically generated, or caused to be generated, documents purporting to be PMMCO account statements. The statements showed account values purporting to reflect investment gains. The purported gains were often substantial and were frequently greater than the market indices.

14. On or about October 18, 2021, the documents purporting to be account statements that **LOPEZ** periodically generated or caused to be generated, represented that PMMCO client account values were collectively worth approximately $39 million.

15. On or about November 9 and 10, 2021, government agents seized PMMCO assets.

16. Those assets, which were mostly comprised of precious metals, were valued at less than $15 million.

17. After agents seized PMMCO's assets, **LOPEZ** continued to generate, or caused to be generated, documents purporting to be PMMCO account statements. On or about May 31, 2022, those statements represented that PMMCO client account values were worth approximately $49 million.

<u>Counts 1-8</u>

18. The General Allegations are re-alleged and incorporated by reference as though fully set forth therein.

19. From on or about September 25, 2015, and continuing through to on or about March 31, 2022, in Santa Fe County, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and

attempting to execute the scheme and artifice caused writings, signs, and signals to be transmitted by means of wire communications in interstate commerce.

## The Scheme and Artifice

20. **LOPEZ's** scheme and artifice consisted of fraudulently inducing clients and prospective clients to send him funds and using those funds to buy precious metals, to pay other PMMCO clients, and to pay himself.

21. As part of the scheme and artifice, **LOPEZ** communicated various false promises and misrepresentations to clients and prospective clients related to **LOPEZ's** investment ability and investment strategy. Those false promises and misrepresentations included:

   a. **LOPEZ** falsely told various clients and prospective clients that his company PMMCO controlled an investment fund, "the All Weather Strategy Investment," whose value had steadily increased since its inception and whose returns had consistently beat most US stock market indices by a substantial margin for over a decade.

   b. **LOPEZ** falsely told various clients and prospective clients that he could guarantee annual returns of 10% on their principal investment no matter how volatile the stock market might be.

   c. **LOPEZ** falsely told various clients and prospective clients that he could make them an annualized 19.2% return on a retirement investment, in which they would keep their initial principal investment as well.

   d. **LOPEZ** falsely told various clients and prospective clients that he had developed a computer program or algorithm that resulted in consistent and substantial above-average market returns on investments.

  e. **LOPEZ** falsely told various clients and prospective clients that he would primarily invest their funds in stocks and bonds, moving their money between those two investment instruments when market indicators or his computer algorithm told him to move the money between the two types of investment instruments.

  f. **LOPEZ** falsely promised various clients and prospective clients that **LOPEZ** would place their funds in individual Charles Schwab brokerage accounts from which **LOPEZ** would manage those funds --- primarily to buy and sell stocks and bonds.

  g. **LOPEZ** falsely represented to various clients the performance of his investment funds.

  h. **LOPEZ** falsely represented to various clients the value of their PMMCO investment via monthly and/or quarterly documents purporting to account statements.

22. After securing agreements from various clients and prospective clients based on one or more of those above-described false promises and misrepresentations, **LOPEZ** directed clients and prospective clients to send him their funds via wire or mail.

23. As part of the scheme and artifice, **LOPEZ** deposited clients' funds in Wells Fargo, Chase, One AZ Credit Union, and Coconino Federal Credit Union accounts controlled by him or directly used their funds to purchase precious metals, to pay other PMMCO clients, and to pay his own expenses.

24. As part of the scheme and artifice, **LOPEZ** periodically generated and caused to be generated documents purporting to be PMMCO account statements and delivered those

statements to clients. The statements purported to report investment gains which were often substantial and frequently greater than the market average.

   a. For example, on or about November 30, 2021, a client herein referred to as J.F. received a document entitled account statement ending in account number 8271. The document reflected that, in 2016, J.F. had invested $200,000 with **LOPEZ** and PMMCO. The November 30, 2021, document purporting to be an account statement reported that J.F.'s initial $200,000 investment had, purportedly, grown to $3,289,273.58, a 1,544% increase over an approximate five-year period. This growth calculation excludes a $565,000 withdrawal during 2021.

   b. Over the same period, according to the Wall Street Journal markets website, an investment in the S&P 500, a stock index tracking the stock performance of 500 large companies listed on United States stock exchanges, would have increased only by 103.99%.

   c. Over the same period, as reflected by Kitco – a company tracking the price of precious metals – the price of silver per ounce increased from $15.88 to $22.88, or a 44.08% increase.

   d. Over the same period, as reflected by Kitco, the price of gold per ounce increased from $1,150.90 to $1,779.30, or a 54.60% increase.

<u>Execution of the Scheme: Counts 1-8</u>

25. On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain money and property by way of materially false and

6

fraudulent pretenses, representations, and promises, knowingly caused to be transmitted by means of wire communications in interstate commerce any writings, signs and signals as approximately described below:

| Count | On or About Date | Description | Amount |
|---|---|---|---|
| 1 | March 2, 2018 | Wire transfer from K.L. to PMMCO | $76,655.17 |
| 2 | August 15, 2018 | Wire transfer from R.S. to PMMCO | $1,353,336.14 |
| 3 | June 4, 2019 | Wire transfer from A.O. to PMMCO | $90,000 |
| 4 | August 5, 2020 | Wire transfer from M.F. to PMMCO | $30,895.79 |
| 5 | September 3, 2021 | Wire transfer from CW1 to PMMCO | $12,000 |
| 6 | March 2, 2022 | Wire Transfer from J.S. to **LOPEZ** | $100,000 |
| 7 | March 2, 2022 | Wire Transfer from J.S. to **LOPEZ** | $60,000 |
| 8 | March 31, 2022 | Wire Transfer from R.S. and J.S. to **LOPEZ** | $98,444 |

In violation of 18 U.S.C. § 1343.

## Counts 9-19

26. The General Allegations are re-alleged and incorporated by reference as though fully set forth therein.

27. From on or about February 21, 2014 and continuing through to on or about March 17, 2022, in Santa Fe County, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud by means of materially false and fraudulent pretenses and representations, and for the purpose of executing and in order to effect the scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, the defendant caused documents to be delivered by the United States Postal Service and other commercial carriers.

The Scheme and Artifice

28.     The allegations from the Scheme and Artifice described in Counts 1-8 are re-alleged and incorporated by reference as though fully set forth therein.

Executions of the Scheme

29.     On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, knowingly caused the delivery by the United States Postal Service and other commercial interstate carriers, according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, of the following matters, as generally described below:

| Count | On or About Date of Mailing | Description | Amount |
|---|---|---|---|
| 9 | November 26, 2018 | Check from A.Y. to PMMCO via NY Life Insurance | $330,185.18 |
| 10 | April 2, 2020 | Check from P.A. to PMMCO via TSP | $125,000 |
| 11 | May 13, 2020 | Check from R.C. to PMMCO via NRECA | $520,556.18 |
| 12 | May 26, 2020 | Check from T.D. to PMMCO via Ivy Investments | $55,404.32 |
| 13 | June 17, 2021 | Check from Fe. L. to PMMCO via Voya | $340,785.54 |
| 14 | June 24, 2021 | Check from M.M. to PMMCO via NRECA | $417,043.94 |
| 15 | August 5, 2021 | Check from Fe. L. to PMMCO via Voya | $186,881.73 |
| 16 | September 22, 2021 | Check from M.C. to PMMCO via Prudential | $159,253.15 |
| 17 | September 29, 2021 | Check from Ro. A. to PMMCO via Wells Fargo | $166,459.71 |
| 18 | December 7, 2021 | Check from J.M. to PMMCO via Voya | $322,465.18 |
| 19 | March 17, 2022 | Check from F.S. to PMMCO via Voya | $197,733.25 |

In violation of 18 U.S.C. § 1341.

### Counts 20-27

30. The General Allegations are re-alleged and incorporated by reference as though fully set forth therein.

31. From on or about January 8, 2019, and continuing on through on or about July 7, 2022, in Santa Fe County, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice caused writings, signs, and signals to be transmitted by means of wire communications in interstate commerce.

### The Scheme and Artifice

32. The allegations from the Scheme and Artifice described in Counts 1-8 are re-alleged and incorporated by reference as though fully set forth therein.

33. As part of the scheme and artifice, **LOPEZ** sent to clients via email monthly and/or quarterly account statements, which falsely reported the value of any alleged assets in their purported investment accounts controlled by PMMCO. One purpose of sending the account statements with false values was to induce and/or lull investors into keeping their funds with **LOPEZ** and PMMCO.

### Executions of the Scheme

34. On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, knowingly caused to be transmitted by

means of wire communications in interstate commerce any writings, signs and signals as described below:

| Count | On or About Date | Description |
|---|---|---|
| 20 | January 8, 2019 | Email from **LOPEZ** to A.Y. with document purporting to be an account statement. |
| 21 | April 4, 2019 | Email from **LOPEZ** to M.F. with document purporting to be an account statement |
| 22 | May 16, 2020 | Email from **LOPEZ** to P.A. with document purporting to be an account statement |
| 23 | January 25, 2021 | Email from **LOPEZ** to J.V. with document purporting to be an account statement |
| 24 | October 12, 2021 | Email from **LOPEZ** to R.F. with document purporting to be an account statement |
| 25 | November 3, 2021 | Email from **LOPEZ** to CW1 with document purporting to be an account statement |
| 26 | June 9, 2022 | Email from **LOPEZ** J.F. with document purporting to be an account statement |
| 27 | July 7, 2022 | Email from **LOPEZ** to P.A. with document purporting to be an account statement |

In violation of 18 U.S.C. § 1343.

## FORFEITURE ALLEGATION

Counts 1 through 27 of this indictment are realleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(A), and 28 U.S.C. § 2461(c).

Upon conviction of any offense in violation of 18 U.S.C. § 1341 or 1343, the defendant, **LOPEZ**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c), 18 U.S.C. § 982(a)(2)(A), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

### MONEY JUDGMENT

A sum of money representing property constituting or derived from proceeds traceable to the offense(s) set forth in the Count(s) of conviction.

PERSONAL PROPERTY

Personal property constituting or derived from proceeds traceable to the offense(s) set forth in the Count(s) of conviction, including, but not limited to, the following:

a. $217,609.52 seized from Wells Fargo Account ending in 8961

b. $95,731.81 seized from Wells Fargo Account ending in 5813

c. $59,300 U.S. currency

d. approximately 2151 mint 10 troy ounce silver bars

e. approximately 6.07455000 units of Bitcoin Cryptocurrency

f. approximately 3.993 units of Ethereum Cryptocurrency

g. approximately 6,540 $1 U.S. Mint American Eagle Silver Bullion Coins

h. approximately 5,743 Pre-1964 U.S. Mint 90% Silver Dimes

i. approximately 2,160 $50 U.S. Mint American Eagle Gold Bullion Coins

j. approximately 1,500 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

k. approximately 500 Münze Österreich 1.5EUR Wiener Philharmoniker [Austrian Mint Vienna Philharmonic] Silver Bullion Coins

l. approximately 236 U.S. Mint $50 American Buffalo Gold Bullion Coins

m. approximately 122 U.S. Mint $5 Commemorative Gold Bullion Coins

n. approximately 69,444 $1 U.S. Mint American Eagle Silver Bullion Coins

o. approximately 17,527 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

p. approximately 12,666 Pre-1964 U.S. Mint 90% Silver Dimes

q. approximately 5,016 Pre-1964 U.S. Mint Silver Quarters

r. approximately 198 U.S. $20 Liberty Double Eagle Gold Coins

s. approximately 157 U.S. $20 Liberty Gold Coins

t. approximately 49 Various Mint 10 Troy Ounce Silver Bars

u. approximately 66 $50 U.S. Mint American Eagle Gold Bullion Coins

v. approximately 54 $50 U.S. Mint American Eagle Proof Gold Bullion Coins

w. approximately 34 Royal Canadian Mint CA$50 Maple Leaf Gold Bullion Coins

x. approximately 30 Suid-Afrika Krugerrand, South African Mint 1 Troy Ounce Gold Bullion Coins

y. approximately 27 $25 U.S. Mint American Eagle Proof Gold Bullion Coins

z. approximately 12 $10 U.S. Mint First Spouse Gold Bullion Coins

aa. approximately 11 $25 U.S. Mint American Eagle Gold Bullion Coins

bb. approximately 10 $5 U.S. Mint American Eagle Proof Gold Bullion Goins,

cc. approximately 9 $10 U.S. Mint American Eagle Proof Gold Bullion Coins

dd. approximately 5 Various Mint 1 Troy Ounce Gold Bars

ee. approximately 5 Various Mint 100 Troy Ounce Silver Bars

ff. approximately 5 Münze Österreich 100EUR Wiener Philharmoniker [Austrian Mint Vienna Philharmonic] Gold Bullion Coins

gg. approximately 4 $10 U.S. Mint American Eagle Gold Bullion Coins

hh. approximately 3 Royal Australian Mint AU$100 Kangaroo Gold Bullion Coins

    ii. approximately 2 Perth Mint AU$100 Gold Nugget Gold Bullion Coins

    jj. approximately 2 Suid-Afrika Krugerrand, South African Mint ½ Troy Ounce Gold Bullion Coins

    kk. approximately 1 $50 U.S. Mint American Buffalo Proof Gold Bullion Coin

    ll. approximately 1 U.S. Mint Half Dollar Kennedy Proof Gold Bullion Coin

    mm. approximately 103,000 $1 U.S. Mint American Eagle Silver Bullion Coins.

If any property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

    A TRUE BILL:

    /S/
    _____
    FOREPERSON OF THE GRAND JURY

*[signature]*

**Assistant United States Attorney**

12/20/2022 12:39 PM