FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 17 2023

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 22-2053 MLG |
| ) | |
| vs. ) | Counts 1-8, 21-30: 18 U.S.C. § 1343: |
| ) | Wire Fraud; |
| **JOHN LOPEZ**, ) | |
| ) | Counts 9-20, 31: 18 U.S.C. § 1341: |
| Defendant. ) | Mail Fraud; |
| ) | |
| ) | Counts 32-34: 18 U.S.C. § 1957(a): |
| ) | Engaging in Monetary Transactions in |
| ) | Property Derived from Specified |
| ) | Unlawful Activity. |

## S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

### General Allegations

**At all times material to this indictment:**

1. Personal Money Management Company ("PMMCO") was a corporation, founded in 1996, that, ostensibly, provided financial management services. It served individuals in the District of New Mexico and elsewhere. A large portion of PMMCO's clients were retirees or those close to retirement.

2. Defendant **JOHN LOPEZ** was the president and founder of PMMCO.

3. PMMCO had no employees.

4.     **LOPEZ** personally employed a person who served as an office manager, but this person was not an employee of PMMCO.  From October 2022, continuing on until the date of this Superseding Indictment, Lopez has not employed anyone.

5.     From 2014 continuing on until the date of this Superseding Indictment, **LOPEZ** held himself out as an investment advisor with considerable expertise who could and had consistently and substantially beat commonly-used industry benchmarks for return on investments.

6.     To various clients and prospective clients, **LOPEZ** represented that he would invest clients' money primarily by buying and selling stocks and bonds.

7.     From on or about January 4, 2023, continuing on until the date of this Superseding Indictment, **LOPEZ** represented to clients and prospective clients that he would invest clients' money primarily in American Silver Eagle coins.

8.     From on or about February 21, 2014, until on or about November 9, 2021, **LOPEZ** received approximately $19.4 million from his clients for him to invest as he had represented to them.

9.      From on or about February 21, 2014, until on or about November 9, 2021, **LOPEZ** spent approximately $13.3 million of those funds on precious metals, such as gold or silver coins and bars, rather than investing those funds primarily in stocks and bonds as he represented.

10.    From on or about February 21, 2014, until on or about November 9, 2021, **LOPEZ** disbursed approximately $6.1 million to PMMCO clients, representing that the funds originated from their individual PMMCO accounts and/or from purported investment gains.

11. According to PMMCO bank records, from on or about November 10, 2021, continuing on until April 22, 2022, **LOPEZ** received approximately $2 million more from clients.

12. According to PMMCO bank records, from on or about November 10, 2021, continuing on until May 13, 2022, **LOPEZ** spent approximately $1 million of those funds on precious metals, such as gold or silver coins and bars.

13. According to PMMCO bank records, from on or about November 10, 2021, continuing on until August 31, 2022, **LOPEZ** disbursed approximately $903,000 to PMMCO clients, representing that the funds originated from their individual PMMCO accounts and/or from purported investment gains.

14. After securing client money, **LOPEZ** periodically generated, or caused to be generated, documents purporting to be PMMCO client account statements. The statements showed account values purporting to reflect account balance and investment gains. The purported gains were often substantial and were frequently greater than the market indices.

15. On or about October 18, 2021, the documents purporting to be account statements that **LOPEZ** periodically generated or caused to be generated, represented that PMMCO client account values were collectively worth approximately $39 million.

16. On or about November 9 and 10, 2021, government agents seized PMMCO assets.

17. Those assets, which were mostly comprised of precious metals, were valued at less than $15 million on or about November 9, 2021.

18. After agents seized PMMCO's assets, **LOPEZ** continued to generate, or caused to be generated, documents purporting to be PMMCO account statements. On or about May 31,

2022, those statements represented that PMMCO client account values were worth approximately $49 million.

## Counts 1-8

19. The General Allegations are re-alleged and incorporated by reference as though fully set forth therein.

20. From on or about September 25, 2015, and continuing through to on or about March 31, 2022, in Santa Fe County, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the scheme and artifice caused writings, signs, and signals to be transmitted by means of wire communications in interstate commerce.

## The Scheme and Artifice

21. **LOPEZ's** scheme and artifice consisted of fraudulently inducing clients and prospective clients to send him funds and using those funds to buy precious metals, to pay other PMMCO clients, and to pay himself.

22. As part of the scheme and artifice, **LOPEZ** communicated various false promises and misrepresentations to clients and prospective clients related to **LOPEZ's** investment ability and investment strategy. Those false promises and misrepresentations included:

   a. **LOPEZ** falsely told various clients and prospective clients that his company PMMCO controlled an investment fund, "the All Weather Strategy Investment," whose value had steadily increased since its

4

        inception and whose returns had consistently beat most US stock market indices by a substantial margin for over a decade.

b.    **LOPEZ** falsely told various clients and prospective clients that he could guarantee annual returns of 10% on their principal investment no matter how volatile the stock market might be.

c.    **LOPEZ** falsely told various clients and prospective clients that he could make them an annualized 19.2% return on a retirement investment, in which they would keep their initial principal investment as well.

d.    **LOPEZ** falsely told various clients and prospective clients that he had developed a computer program or algorithm that resulted in consistent and substantial above-average market returns on investments.

e.    **LOPEZ** falsely told various clients and prospective clients that he would primarily invest their funds in stocks and bonds, moving their money between those two investment instruments when market indicators or his computer algorithm told him to move the money between the two types of investment instruments.

f.    **LOPEZ** falsely promised various clients and prospective clients that **LOPEZ** would place their funds in individual Charles Schwab brokerage accounts from which **LOPEZ** would manage those funds --- primarily to buy and sell stocks and bonds.

g.    **LOPEZ** falsely represented to various clients the performance of his investment funds.

      h.      **LOPEZ** falsely represented to various clients that he could accept rollovers from tax-protected accounts without tax consequences;

      i.      **LOPEZ** falsely represented to various clients the value of their PMMCO investment via monthly and/or quarterly documents purporting to account statements.

23.    After securing agreements from various clients and prospective clients based on one or more of those above-described false promises and misrepresentations, **LOPEZ** directed clients and prospective clients to send him their funds via wire or mail.

24.    As part of the scheme and artifice, **LOPEZ** deposited clients' funds in Wells Fargo, Chase, One AZ Credit Union, and Coconino Federal Credit Union accounts controlled by him, or directly used their funds to purchase precious metals, to pay other PMMCO clients, and to pay his own expenses.

25.    As part of the scheme and artifice, **LOPEZ** periodically generated and caused to be generated documents purporting to be PMMCO account statements and delivered those statements to clients. The statements purported to report investment gains which were often substantial and frequently greater than the market average.

      a.      For example, on or about November 30, 2021, a client herein referred to as J.F. received a document entitled account statement ending in account number 8271. The document reflected that, in 2016, J.F. had invested $200,000 with **LOPEZ** and PMMCO. The November 30, 2021, document purporting to be an account statement reported that J.F.'s initial $200,000 investment had, purportedly, grown to $3,289,273.58, a 1,544%

6

        increase over an approximate five-year period. This growth calculation excludes a $565,000 withdrawal during 2021.

    b.    Over the same period, according to the Wall Street Journal markets website, an investment in the S&P 500, a stock index tracking the stock performance of 500 large companies listed on United States stock exchanges, would have increased only by 103.99%.

    c.    Over the same period, as reflected by Kitco – a company tracking the price of precious metals – the price of silver per ounce increased from $15.88 to $22.88, or a 44.08% increase.

    d.    Over the same period, as reflected by Kitco, the price of gold per ounce increased from $1,150.90 to $1,779.30, or a 54.60% increase.

Execution of the Scheme: Counts 1-8

26.    On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, knowingly caused to be transmitted by means of wire communications in interstate commerce any writings, signs and signals as approximately described below:

| Count | On or About Date | Description | Amount |
|---|---|---|---|
| 1 | March 2, 2018 | Wire transfer from K.L. to PMMCO | $76,655.17 |
| 2 | August 15, 2018 | Wire transfer from R.S. to PMMCO | $1,353,336.14 |
| 3 | June 4, 2019 | Wire transfer from A.O. to PMMCO | $90,000 |
| 4 | August 5, 2020 | Wire transfer from M.F. to PMMCO | $30,895.79 |
| 5 | September 3, 2021 | Wire transfer from CW1 to PMMCO | $12,000 |
| 6 | March 2, 2022 | Wire Transfer from J.S. to **LOPEZ** | $100,000 |
| 7 | March 2, 2022 | Wire Transfer from J.S. to **LOPEZ** | $60,000 |

| Count | On or About Date | Description | Amount |
|---|---|---|---|
| 8 | March 31, 2022 | Wire Transfer from R.S. and J.S. to **LOPEZ** | $98,444 |

In violation of 18 U.S.C. § 1343.

## Counts 9-20

27.     The General Allegations are re-alleged and incorporated by reference as though fully set forth therein.

28.     From on or about February 21, 2014 and continuing through to on or about February 22, 2023, in Santa Fe County, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud by means of materially false and fraudulent pretenses and representations, and for the purpose of executing and in order to effect the scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, the defendant caused documents to be delivered by the United States Postal Service and other commercial carriers.

## The Scheme and Artifice

29.     The allegations from the Scheme and Artifice described in Counts 1-8 are re-alleged and incorporated by reference as though fully set forth therein.

## Executions of the Scheme

30.     On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, knowingly caused the delivery by the United States Postal Service and other commercial interstate carriers, according to the direction thereon,

8

and at the place at which it is directed to be delivered by the person to whom it is addressed, of the following matters, as generally described below:

| Count | On or About Date of Mailing | Description | Amount |
|---|---|---|---|
| 9 | November 26, 2018 | Check from A.Y. to PMMCO via NY Life Insurance | $330,185.18 |
| 10 | April 2, 2020 | Check from P.A. to PMMCO via TSP | $125,000 |
| 11 | May 13, 2020 | Check from R.C. to PMMCO via NRECA | $520,556.18 |
| 12 | May 26, 2020 | Check from T.D. to PMMCO via Ivy Investments | $55,404.32 |
| 13 | June 17, 2021 | Check from Fe. L. to PMMCO via Voya | $340,785.54 |
| 14 | June 24, 2021 | Check from M.M. to PMMCO via NRECA | $417,043.94 |
| 15 | August 5, 2021 | Check from Fe. L. to PMMCO via Voya | $186,881.73 |
| 16 | September 22, 2021 | Check from M.C. to PMMCO via Prudential | $159,253.15 |
| 17 | September 29, 2021 | Check from Ro. A. to PMMCO via Wells Fargo | $166,459.71 |
| 18 | December 7, 2021 | Check from J.M. to PMMCO via Voya | $322,465.18 |
| 19 | March 17, 2022 | Check from F.S. to PMMCO via Voya | $197,733.25 |
| 20 | April 4, 2022 | Check from J.B. to PMMCO | $137,000 |

In violation of 18 U.S.C. § 1341.

## Counts 21-30

31. The General Allegations are re-alleged and incorporated by reference as though fully set forth therein.

32. From on or about January 8, 2019, and continuing on through on or about July 7, 2022, in Santa Fe County, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing and attempting to execute the

scheme and artifice caused writings, signs, and signals to be transmitted by means of wire communications in interstate commerce.

## The Scheme and Artifice

33.     The allegations from the Scheme and Artifice described in Counts 1-8 are re-alleged and incorporated by reference as though fully set forth therein.

34.     As part of the scheme and artifice, **LOPEZ** sent to clients via email monthly and/or quarterly account statements, which falsely reported the value of any alleged assets in their purported investment accounts controlled by PMMCO.  One purpose of sending the account statements with false values was to induce and/or lull investors into keeping their funds with **LOPEZ** and PMMCO.

## Executions of the Scheme

35.     On or about the dates listed below, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, knowingly caused to be transmitted by means of wire communications in interstate commerce any writings, signs and signals as described below:

| Count | On or About Date | Description |
|---|---|---|
| 21 | January 8, 2019 | Email from **LOPEZ** to A.Y. with document purporting to be an account statement. |
| 22 | April 4, 2019 | Email from **LOPEZ** to M.F. with document purporting to be an account statement |
| 23 | May 16, 2020 | Email from **LOPEZ** to P.A. with document purporting to be an account statement |
| 24 | January 25, 2021 | Email from **LOPEZ** to J.V. with document purporting to be an account statement |
| 25 | October 12, 2021 | Email from **LOPEZ** to R.F. with document purporting to be an account statement |

| Count | On or About Date | Description |
|---|---|---|
| 26 | November 3, 2021 | Email from **LOPEZ** to CW1 with document purporting to be an account statement |
| 27 | May 5, 2022 | Email from **LOPEZ** to J.B. with document purporting to be an account statement |
| 28 | June 8, 2022 | Email from **Lopez** to J.B. with document purporting to be an account statement |
| 29 | June 9, 2022 | Email from **LOPEZ** to J.F. with document purporting to be an account statement |
| 30 | July 7, 2022 | Email from **LOPEZ** to P.A. with document purporting to be an account statement |

In violation of 18 U.S.C. § 1343.

## Count 31

36.   The General Allegations, paragraph 28, and the allegations from paragraphs 20, 21(a), 21(b), 21(c), 21(g), 22-23, of the Scheme and Artifice described in Counts 1-8 are re-alleged and incorporated by reference as though fully set forth therein.

37.   On or about January 30, 2023, after having been indicted in the present case, **LOPEZ** emailed a client account agreement to a new client, N.A., with whom **LOPEZ** had been communicating about investing her retirement funds with **LOPEZ** as N.A.'s investment advisor. Notwithstanding **LOPEZ's** role as N.A.'s new investment advisor and professional fiduciary of N.A.'s funds, **LOPEZ** failed to disclose to N.A. that he was under indictment for mail and wire fraud.

38.   In the client account agreement that **LOPEZ** sent to N.A., **LOPEZ** stated that he had switched from investing in stocks and bonds to investing in American Silver Eagle coins for all of his investment funds for clients.

39.   In the client account agreement that **LOPEZ** emailed to N.A., **LOPEZ** nevertheless continued to falsely represent that he had controlled over many years an "investment fund [that] ha[d] steadily gained in value over its date of inception[,] consistently beating most US stock

11

market indexes by a substantial margin." **LOPEZ** also continued to falsely represent that he had a fund which could "guarantee[]" a "10% yield." And **LOPEZ** continued to falsely state that he could offer these kinds of funds because of his company's "previous successes." In short, via the representations in this agreement, **LOPEZ** continued to falsely and materially misrepresent to N.A. that he had outstanding investment successes in the past, when in fact his investment strategy in the past had yielded returns substantially lower than well-known passive investment strategies such as investing in the S&P 500 stock index."

40. Through the above false and material misrepresentations and omissions, **LOPEZ** induced N.A. to send him funds from her retirement savings account.

41. On or about February 22, 2023, in the District of New Mexico, and elsewhere, the defendant, **LOPEZ**, for the purpose of executing and in order to effect the above-described scheme and artifice to defraud and to obtain money and property by way of materially false and fraudulent pretenses, representations, and promises, knowingly caused the delivery by the United States Postal Service and other commercial interstate carriers, according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, a check from N.A. to PMMCO via Lincoln Financial Group for $13,258.06.

In violation of 18 U.S.C. § 1341.

## Counts 32-34

42. The General Allegations, the allegations from the Scheme and Artifice described in Counts 1-8, and the allegations from paragraphs 37-41 are re-alleged and incorporated by reference as though fully set forth therein.

43. Between on or about June 13, 2022, and on or about March 15, 2023, in the District of Arizona, the defendant, **JOHN LOPEZ**, did knowingly engage and attempt to

engaged in a monetary transaction, in criminally derived property of a value greater than $10,000 that is, the deposit, withdrawal, transfer, and exchange, in and affecting interstate commerce, of funds and a monetary instrument, by, through, and to a financial institution as identified and described below, such property having been derived from specified unlawful activity, that is mail fraud, occurring in the District of New Mexico and elsewhere, as alleged in Counts 19-20, and 31:

| Count | On or About Date | Description |
|---|---|---|
| 32 | June 13, 2022 | Cashier's Check No: 0592201468 dated March 29, 2022, in the amount of $137,000 to be paid to the order of Personal Money Management Co. remitted by J.B. signed over to Route 66 Coin and Collectibles, a dealer in precious metals |
| 33 | July 29, 2022 | Bank Check No: 059093854 dated March 17, 2022, in the amount of $197,733.25 to be paid to the order of Personal Money Mgmt Co. FBO: F.S. signed over to Route 66 Coin and Collectibles, a dealer in precious metals |
| 34 | March 13, 2023 | Bank Check No: 5965972 dated February 22, 2023, in the amount of $13,258.06 to be paid to the order of Personal Money Management Co. FBO: N.A. signed over to Route 66 Coin and Collectibles, a dealer in precious metals |

FORFEITURE ALLEGATION

Counts 1 through 34 of this indictment are realleged and incorporated as part of this section for the purpose of alleging forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(A), and 28 U.S.C. § 2461(c).

Upon conviction of any offense in violation of 18 U.S.C. §§ 1341, 1343, or 1957, the defendant, **LOPEZ**, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1)(A), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to any violations of 18 U.S.C. §§ 1341 or 1343, as well as any property, real or personal, involved in any violation of 18 U.S.C. § 1957, or property

13

traceable to such property. The property to be forfeited includes, but is not limited to, the following:

### MONEY JUDGMENT

A sum of money representing property constituting or derived from proceeds traceable to the offense(s) set forth in the Count(s) of conviction.

### PERSONAL PROPERTY

Personal property constituting or derived from proceeds traceable to the offense(s) set forth in the Count(s) of conviction, including, but not limited to, the following:

a. $217,609.52 seized from Wells Fargo Account ending in 8961

b. $95,731.81 seized from Wells Fargo Account ending in 5813

c. $59,300 U.S. currency

d. approximately 2151 mint 10 troy ounce silver bars

e. approximately 6.07455000 units of Bitcoin Cryptocurrency

f. approximately 3.993 units of Ethereum Cryptocurrency

g. approximately 6,540 $1 U.S. Mint American Eagle Silver Bullion Coins

h. approximately 5,743 Pre-1964 U.S. Mint 90% Silver Dimes

i. approximately 2,160 $50 U.S. Mint American Eagle Gold Bullion Coins

j. approximately 1,500 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

k. approximately 500 Münze Österreich 1.5EUR Wiener Philharmoniker [Austrian Mint Vienna Philharmonic] Silver Bullion Coins

l. approximately 236 U.S. Mint $50 American Buffalo Gold Bullion Coins

m. approximately 122 U.S. Mint $5 Commemorative Gold Bullion Coins

n. approximately 69,444 $1 U.S. Mint American Eagle Silver Bullion Coins

o. approximately 17,527 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

p. approximately 12,666 Pre-1964 U.S. Mint 90% Silver Dimes

q. approximately 5,016 Pre-1964 U.S. Mint Silver Quarters

r. approximately 198 U.S. $20 Liberty Double Eagle Gold Coins

s. approximately 157 U.S. $20 Liberty Gold Coins

t. approximately 49 Various Mint 10 Troy Ounce Silver Bars

u. approximately 66 $50 U.S. Mint American Eagle Gold Bullion Coins

v. approximately 54 $50 U.S. Mint American Eagle Proof Gold Bullion Coins

w. approximately 34 Royal Canadian Mint CA$50 Maple Leaf Gold Bullion Coins

x. approximately 30 Suid-Afrika Krugerrand, South African Mint 1 Troy Ounce Gold Bullion Coins

y. approximately 27 $25 U.S. Mint American Eagle Proof Gold Bullion Coins

z. approximately 12 $10 U.S. Mint First Spouse Gold Bullion Coins

aa. approximately 11 $25 U.S. Mint American Eagle Gold Bullion Coins

bb. approximately 10 $5 U.S. Mint American Eagle Proof Gold Bullion Goins,

cc. approximately 9 $10 U.S. Mint American Eagle Proof Gold Bullion Coins

dd. approximately 5 Various Mint 1 Troy Ounce Gold Bars

ee. approximately 5 Various Mint 100 Troy Ounce Silver Bars

ff. approximately 5 Münze Österreich 100EUR Wiener Philharmoniker [Austrian Mint Vienna Philharmonic] Gold Bullion Coins

gg. approximately 4 $10 U.S. Mint American Eagle Gold Bullion Coins

hh. approximately 3 Royal Australian Mint AU$100 Kangaroo Gold Bullion Coins

ii. approximately 2 Perth Mint AU$100 Gold Nugget Gold Bullion Coins

jj. approximately 2 Suid-Afrika Krugerrand, South African Mint ½ Troy Ounce Gold Bullion Coins

kk. approximately 1 $50 U.S. Mint American Buffalo Proof Gold Bullion Coin

ll. approximately 1 U.S. Mint Half Dollar Kennedy Proof Gold Bullion Coin

mm. approximately 103,000 $1 U.S. Mint American Eagle Silver Bullion Coins.

If any property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL:

/s/
_____
FOREPERSON OF THE GRAND JURY

_Taylor Horst_
_____
Assistant United States Attorney

17