IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 22-cr-2053 MLG |
| ) | |
| **JOHN LOPEZ,** ) | |
| ) | |
| Defendant. ) | |

### UNITED STATES' MOTION FOR PRELIMINARY ORDER OF FORFEITURE

Pursuant to Federal Rule of Criminal Procedure 32.2(b), the United States moves for a Preliminary Order of Forfeiture regarding the following property:

a. $217,609.52 seized from Wells Fargo Account ending in 8961

b. $95,731.81 seized from Wells Fargo Account ending in 5813

c. $59,300 U.S. currency

d. approximately 2,151 mint 10 troy ounce silver bars

e. approximately 6.07455000 units of Bitcoin Cryptocurrency

f. approximately 3.993 units of Ethereum Cryptocurrency

g. approximately 6,540 $1 U.S. Mint American Eagle Silver Bullion Coins

h. approximately 5,743 Pre-1964 U.S. Mint 90% Silver Dimes

i. approximately 2,160 $50 U.S. Mint American Eagle Gold Bullion Coins

J. approximately 1,500 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

k. approximately 500 Munze Osterreich 1.5 EUR Wiener Philharmoniker [Austrian Mint Vienna Philharmonic] Silver Bullion Coins

l. approximately 236 U.S. Mint $50 American Buffalo Gold Bullion Coins

1

m. approximately 122 U.S. Mint $5 Commemorative Gold Bullion Coins

n. approximately 69,444 $1 U.S. Mint American Eagle Silver Bullion Coins

o. approximately 17,527 Royal Canadian Mint CA$5 Maple Leaf Silver Bullion Coins

p. approximately 12,666 Pre-1964 U.S. Mint 90% Silver Dimes

q. approximately 5,016 Pre-1964 U.S. Mint Silver Quarters

r. approximately 198 U.S. $20 Liberty Double Eagle Gold Coins

s. approximately 157 U.S. $20 Liberty Gold Coins

t. approximately 49 Various Mint 10 Troy Ounce Silver Bars

u. approximately 66 $50 U.S. Mint American Eagle Gold Bullion Coins

v. approximately 54 $50 U.S. Mint American Eagle Proof Gold Bullion Coins

w. approximately 34 Royal Canadian Mint CA$50 Maple Leaf Gold Bullion Coins

x. approximately 30 Suid-Afrika Krugerrand, South African Mint 1 Troy Ounce Gold Bullion Coins

y. approximately 27 $25 U.S. Mint American Eagle Proof Gold Bullion Coins

z. approximately 12 $10 U.S. Mint First Spouse Gold Bullion Coins

aa. approximately 11 $25 U.S. Mint American Eagle Gold Bullion Coins

bb. approximately 10 $5 U.S. Mint American Eagle Proof Gold Bullion Goins,

cc. approximately 9 $10 U.S. Mint American Eagle Proof Gold Bullion Coins

dd. approximately 5 Various Mint 1 Troy Ounce Gold Bars

ee. approximately 5 Various Mint 100 Troy Ounce Silver Bars

ff. approximately 5 Munze Osterreich 100EUR Wiener Philharmoniker [Austrian Mint Vienna Philharmonic] Gold Bullion Coins

gg. approximately 4 $10 U.S. Mint American Eagle Gold Bullion Coins

hh. approximately 3 Royal Australian Mint AU$100 Kangaroo Gold Bullion Coins

ii. approximately 2 Perth Mint AU$100 Gold Nugget Gold Bullion Coins

jj. approximately 2 Suid-Afrika Krugerrand, South African Mint ½ Troy Ounce Gold Bullion Coins

kk. approximately 1 $50 U.S. Mint American Buffalo Proof Gold Bullion Coin

ll. approximately 1 U.S. Mint Half Dollar Kennedy Proof Gold Bullion Coin

mm. approximately 103,000 $1 U.S. Mint American Eagle Silver Bullion Coins.

MONEY JUDGMENT

The United States also seeks a sum of money, $24,109,203.20, representing property constituting or derived from proceeds traceable to the offenses set forth in the counts of conviction.

The grounds for this Motion are as follows:

The Defendant John Lopez was charged by superseding indictment with 31 counts of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 & 1343, and 3 counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 ("money laundering"). *See* Doc. 32. After trial, a jury of his peers convicted the Defendant on 29 of those mail and wire fraud counts, and 2 counts of money laundering. Doc. 123.[1]

---

[1] The United States agreed to dismiss three counts after presentation of the evidence.

Consistent with Rule 32.2(a), the United States gave notice to the defendant in the superseding indictment that it intended to seek forfeiture of property as part of any sentence in accordance with the applicable statute. Doc. 32 at 13-16 (citing 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1)(A), 982(b)(1), 1341, 1343, 1957, 21 U.S.C. § 853(p), & 28 U.S.C. § 2461(c)). The United States now seeks that forfeiture.

## APPLICABLE LAW

**A.   WHEN THE STATUTES APPLY, FORFEITURE IS MANDATORY.**

Forfeiture is a mandatory part of a defendant's sentence. *See* Fed. R. Crim. P. 32.2(b)(1)-(2) (using mandatory "must" language with respect to the Court's role); *United States v. Jalaram, Inc.,* 599 F.3d 347, 351 n.3 (4th Cir. 2010) ("[A] sentencing court does not have discretion to ignore a statutory forfeiture provision."). A variety of Circuit Court authority, including the Tenth, affirms that criminal forfeiture is mandatory, and that courts may not decline to order forfeiture. *See*, *e.g.*, *United States v. Newman*, 659 F.3d 1235, 1239-40 (9th Cir. 2011) ("[B]oth [forfeiture] statues require that the district court "shall order" forfeiture.") citing 18 U.S.C. § 982(a)(2), 28 U.S.C. § 2461(c); *United States v. McGinty*, 610 F.3d 1242, 1245-46 (10th Cir. 2010); *United States v. Torres*, 703 F.3d 194, 204 (2d Cir. 2012). Indeed, the Supreme Court itself has observed that "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applie[s]." *United States v. Monsanto*, 491 U.S. 600, 607 (1989). Accordingly, here, should the forfeiture statutes apply, the Court must order forfeiture.

**B.   PROCEDURE**

Rule 32.2 provides that, "[a]s soon as practical after a verdict or finding of guilty . . . on any count in the indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture." Fed. R. Crim. P. 32.2(b)(1)(A). If the United States "seeks a personal money judgment," as it does here, "the court must determine the

4

amount of money that the defendant will be ordered to pay." *Id.*   In assigning a value to a money judgment "a district court may award the government a money judgment against a defendant for the value of what [the defendant] obtained from his criminal activity." *United States v. Channon*, 973 F.3d 1105, 1112 (10th Cir. 2020).

If "the government seeks forfeiture of specific property," which the United States is also seeking here, there is a multi-step process. *Id.*; *United States v. Peck*, 644 F. Supp. 3d 954 (D. Utah 2022).  First, "the court must determine whether the government has established the requisite nexus between the property and the offense."  Fed. R. Crim. P. 32.2(b)(1)(A).  The United States holds the burden of proof and must show by a preponderance of the evidence that the requisite nexus exists.  *United States v. Bader*, 678 F.3d 858, 893 (10th Cir. 2012); *United States v. King*, 231 F. Supp. 3d 872, 905 (W.D. Okla. 2017) citing *United States v. Smith*, 770 F.3d 628, 637 (7th Cir. 2014).  The Court may make its nexus determination on "evidence already in the record, . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."  Fed. R. Crim. P. 32.2(b)(1)(B).

Next, if a nexus is established, "[t]he court must enter a preliminary order of forfeiture without regard to any third party's interest in the property."  *Peck*, 644 F. Supp 3d at 957; Fed. R. Crim. P. 32.2(b)(2)(A).  Such a "preliminary order of forfeiture" must be entered "promptly," and "unless doing so is impractical," the Court "must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4)."  Fed. R. Crim. P. 32.2(b)(3)(A)-(B).  The preliminary order becomes final to the defendant at sentencing or at any time before sentencing if the defendant consents.  Fed. R. Crim. P. 32.2(b)(4).

Finally, after that preliminary order is entered, third parties may assert legal interests and may petition the Court for a hearing to adjudicate their interest in the property. *Peck*, 644 F. Supp. 3d at 957-58. Once any ancillary proceedings as to third party claims ends, the Court must enter a final order of forfeiture. Fed. R. Crim. P. 32.2(c)(2). "The defendant may not object to the entry of the final order on the ground that the property belongs, in whole or in part, to a codefendant or third party." *Id.*

### C. MONEY JUDGMENTS

Though the criminal forfeiture statue "does not explicitly refer to money judgments," the Tenth Circuit and other Circuit Courts of Appeals "uniformly recognize[] that money judgments representing unlawful proceeds are appropriate." *United States v. McGinty*, 610 F.3d 1242, 1246 (10th Cir. 2010) (collecting cases); *id.* ("[*I*]*n personam* money judgments are appropriate under criminal forfeiture."). Accordingly, the government "is entitled to a money judgment" against criminal defendants "for money [they] obtain[] from [their] criminal activity." *Id.* This amount is equal to "the amount of the Defendants' proceeds" not profits or realized "gain[s]." *Channon*, 973 F.3d at 1113; *see* 18 U.S.C. § 981(a)(2)(A) (forfeiture "is not limited to the net gain or profit realized from the offense").

### D. NEXUS

The required nexus the United States must show between the property and the offense depends on the offense of conviction. *See United States v. Capoccia*, 503 F.3d 103, 115 (2d Cir. 2007); *Peck*, 644 F. Supp. 3d at 957. Here, the nexus requirement differs between the money laundering counts and the mail/wire fraud counts. *See* 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1).

Starting first with the mail and wire fraud counts, the requisite nexus exists for any property which constitutes or is derived from proceeds traceable to those offenses. 18 U.S.C.

6

...

§ 981(a)(1)(C); *see United States v. Yass*, 636 F. Supp. 2d 1177, 1179 (D. Kan. 2009). With mail and wire fraud, criminal forfeiture is not limited to proceeds traceable to the specific executions of the scheme as alleged as counts of the indictment. *Yass*, 636 F. Supp. 2d at 1184-85. Rather, forfeiture encompasses all proceeds traceable to the whole breadth and conduct of the *scheme* as forming the basis of conviction. *See United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016) ("Because the proceeds from a mail fraud or wire fraud offense includes funds obtained as the result of the commission of the offense, and the commission of such a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole, the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, *including* additional executions of the scheme that were not specifically charged or on which the defendant was acquitted.") (emphasis added); *Capoccia*, 503 F.3d at 117-18 (acknowledging scope of forfeiture is broad when the underlying offense of conviction involves a scheme); *United States v. Hasson*, 333 F.3d 1264, 1279-80 (11th Cir. 2003); *Yass*, 636 F. Supp. 2d at 1184-85 ("Courts have ordered forfeiture of property derived from uncharged and acquitted conduct that is part of the same scheme or enterprise as convicted conduct, relying on the breadth of the conduct forming the basis of the offense of conviction). Accordingly, here, all property constituting proceeds of Lopez's scheme are forfeitable, in addition to all property derived from proceeds of Lopez's scheme.

For the money laundering counts, a nexus between the property and offense exists where the property was "involved" in the money laundering offense, or any property "traceable" to property involved in the offense. 18 U.S.C. § 982(a)(1); *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998). Property "involved" in the offense "include[s] the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and *any property used to facilitate the laundering offense.*" *Bornfield*, 145 F.3d at 1135 (emphasis in original).

Facilitation occurs when "the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance." *Id.* While pooling or comingling of tainted funds with untainted funds does not, on its own, justify forfeiture of all funds, forfeiture is justified of both legitimate and illegitimate funds commingled when the United States "demonstrates that the defendant pooled the funds to facilitate, i.e., disguise the nature and source of, his scheme." *Id.* Traceable, in turn, means "property where the acquisition is attributable to the money laundering scheme rather than from money obtained from untainted sources." *Id.*

### E. SUBSTITUTE ASSETS

Substitute assets are untainted property of the defendants that may be forfeited in substitution for directly forfeitable property, under circumstances set forth in the substitute assets statute, 21 U.S.C. § 853(p). Following entry of a forfeiture money judgment, if the prosecution shows that the proceeds of the crimes cannot be located upon the exercise of due diligence or were commingled with other property which cannot be divided without difficulty, the Court will enter an order forfeiting "any other property of the defendant, up to the value of" the criminal proceeds. 21 U.S.C. § 853(p).

### ARGUMENT

The Court should enter a preliminary order of forfeiture (i) entering a money judgment against the defendant in the amount of at least $24,109,203.20 and (ii) forfeiting the precious metals seized and other specific assets listed below. The money judgment amount is appropriate because that is the total amount Lopez defrauded investors. As to the precious metals and other specific assets listed above, those items are proceeds or are property derived from proceeds of Lopez's mail and wire fraud. For those reasons, explored more deeply below, the Court should enter a preliminary order forfeiting that amount and those assets.

I. **THE COURT SHOULD ENTER A MONEY JUDGMENT OF $24,109,203.20 AGAINST LOPEZ.**

The Court should enter a money judgment of $24,109,203.20, as that amount equals the "property . . . obtained directly or indirectly as a result of the commission of the offense" – here wire and mail fraud. 18 U.S.C. § 981(a)(2)(A).[2] As explained above, the appropriate forfeiture order in mail and wire fraud cases is bounded by the breadth of the scheme and not to the specific counts proven at trial. *E.g.*, *United States v. Lo*, 839 F.3d at 793. As shown at trial, Lopez executed a long running scheme inducing over a hundred people to send him millions of dollars. *See* Gov. Ex.[3] 173 (documenting approximately 119 different investors with Lopez). In total, those investors sent Lopez $24,109,203.20. That full dollar amount obtained from victims is, accordingly, the appropriate value of a money judgment in this case.

    A.    **Lopez's scheme defrauded hundreds of investors over 8 years.**

At trial the jury convicted Lopez on all 29 counts of mail and/or wire fraud that were submitted to them. The evidence showed that Lopez devised and executed a scheme to defraud whereby, over an 8-year period, he induced over a hundred victim investors to send him substantial sums of money by, among other things, (i) falsely representing to them that he was an investment advisor with a history of substantially beating the stock market; (ii) falsely representing that he invested victim investor money primarily in the stock-and-bond market and generated his

---

[2] While the money laundering counts support an independent source of forfeiture for a subset of this money -- $334,733.25 from the laundered checks of Freddie Sanchez and Jay Bailey underlying counts 30 and 31 -- the United States does not focus its analysis on that source of forfeiture, since the mail-and-wire-fraud-forfeiture theory encompasses those amounts and more. However, if the Court were to conclude forfeiture was not appropriate under the mail or wire fraud counts, the Court should still enter a $334,733.25 money judgment against Mr. Lopez because that amount of money was "involved in" the money laundering counts of conviction, e.g., those are the face values of the checks laundered. 18 U.S.C. § 982(a)(1).

[3] "Gov. Ex." refers to the Government's exhibits introduced at trial. The United States will file a separate notice of exhibit lodging, attaching all trial exhibits it refers to herein.

extraordinary returns by way of a timing model whereby he moved investments based on market indicators; (iii) falsely promising a guaranteed monthly benefit option whereby victim investors were promised a monthly payment in line with an annualized 19.2% return and a guarantee that their initial investment would remain untouched; and (iv) generating or causing to be generated false account statements that falsely reported the gains to investor victims in line with the false history of success he represented to victim investors. *See, e.g.*, Gov. Exs. 1, 4, 10, 173 ("Gov. Ex.").

As shown at trial, however, the defendant did not have the history of success that he represented, he did not have any market timing model (let alone the model capable of beating the market that he represented), and he did not generate the returns he represented month after month after month in client statements. Instead, he took investor money, and for the most part, bought and held precious metals. Gov. Exs. 122A, 135, 138. In addition, he used some investor money to purchase cryptocurrency, to pay off other investors – mostly those who were promised monthly payments -- and to pay himself. *Id.*

### B. The money judgment entered should be $24,109,203.20.

A money judgment equal to every single cent Lopez induced others to send him as part of the scheme is the appropriate value of that money judgment. That is so because every penny investors sent Lopez is property he obtained "directly, . . . as the result of the commission of the offense." 18 U.S.C. § 981(a)(2)(A); *see United States v. Kalish*, 626 F.3d 165, 168 (2d Cir. 2010) (affirming forfeiture amount that accounted for all victims of a fraud scheme).

The Court should, accordingly, enter a money judgment equaling $24,109,203.20, which is the total amount Lopez received from investors pursuant to the fraud scheme. At trial, the United States proved that, between December 17, 2013, and November 8, 2021, Lopez received $19,489,285.37 from investors. Gov. Ex. 134. After the search warrant executions, Lopez received

10

and deposited $2,096,255.93 more of investors funds into bank accounts controlled by him, Gov. Ex. 138, and signed over $2,523,661.90 more of investor funds over to Route 66 coin and collectibles. *See* Forfeiture Exhibit 1 attached hereto. Adding those figures together yields a money judgment of $24,109,203.20.

That Lopez may have spent some of those funds to pay for his own expenses or pay off other investors is of no moment when calculating the money judgment. *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006). That is so because "[t]he amount of a personal money judgment is measured by the proceeds of the defendant's illegal activity, rather than the amount of assets he retains at the time of sentencing." *United States v. Nagin*, 810 F.3d 348, 353 (5th Cir. 2016); *Hall*, 434 F.3d at 59 ("[E]ven if a defendant does not have sufficient funds to cover the forfeiture at the time of conviction," the United States "may seize future assets to satisfy the order); *see also United States v. Hampton*, 732 F.3d 687, 691-92 (6th Cir. 2013) (collecting cases). Indeed the law on that issue reflects that criminal forfeiture is not merely remedial in nature; its purpose is to punish. *Libretti v. United States*, 516 U.S. 29, 41 (1995) ("[F]orfeiture is precisely that: punishment."). Accordingly, whether Lopez used some investor funds to pay off other investors, does not impact the money judgment calculus. The Court should enter a money judgment of $24,109,203.20.

## II.    THE COURT SHOULD ORDER FORFEITURE OF SPECIFIC PROPERTY.

### A.    The precious metals, bank accounts, currency, and cryptocurrency itemized above are forfeitable as proceeds traceable to the mail and wire fraud scheme as proven at trial.

Independent of the money judgment, the proceeds and the property derived from the proceeds that are traceable to Lopez's mail and wire fraud scheme are separately forfeitable. The precious metals, the bank accounts, the currency, and the cryptocurrency itemized above are all either proceeds or property derived from proceeds from Lopez's mail and wire fraud. Accordingly, for the reasons that follow the Court should enter a preliminary order of forfeiture for those items.

11

1.  <u>The precious metals seized are forfeitable as property derived from the proceeds of Lopez's scheme to defraud.</u>

Agents of the FBI and the United States Marshals Service seized approximately $11.5 – $14.8 million[4] worth of gold and silver from Lopez's home, office, and a storage unit. Gov. Exs. 170-171, 233, 247-48, 264. For the reasons that follow, those precious metals seized were more likely than not purchased with investor funds making them fraud proceeds. Accordingly, the Court should order them forfeited.

First, there is no serious contest that the majority of precious metals seized were investor funds and thus, now, are forfeitable proceeds of fraud. That is so because Lopez has admitted in various places that fact already. For instance, in his opening statement at trial, Lopez, through counsel, stated that Lopez "unapologetically invested his clients' money" in precious metals including silver, gold, coins, and bullions of different weights:

> 17  banks and the Treasury printing cash, John encouraged
> 18  investing in precious metals.  These include silver.  It
> 19  includes gold.  It includes coins.  It includes bullion
> 20  of different weights.  John has a particular expertise,
> 21  as you will hear, in finding coins with what's known as
> 22  numismatic value; in other words, value based on rarity.
> 23  These are the things that John unapologetically invested
> 24  his clients' money in.

Trial Tr. Excerpt Lopez's Opening at 6:17-24 (Exhibit 2 attached hereto). Lopez also did not contest that the precious metals seized were investor funds, admitting again in opening:

---

[4] This range is based off of appraisals of the precious metals valued on two discrete dates, November 9, 2021, and March 25, 2022. Gov. Exs. 170-171. The current value of the assets may be different. The range exists because the appraiser who testified at trial opined three different potential values of precious metals based on different appraisal methodologies – Replacement Value, Fair Market Value, and Liquidation Value. *Id.* Different methodologies produce different values.

> As a matter of fact, the government was able to obtain and still retains many, many, many millions of dollars of silver and gold investments. . . . At John's home, of course, the government seized anything it could including a great deal of paperwork. *They seized most importantly though the investments themselves.*

Trial Tr. Excerpt Lopez's Opening at 8:13-20 (emphasis added). In a separate, but related, civil forfeiture proceeding against the precious metals, Lopez admitted much the same thing, stating in a filing "I possessed the remaining Defendant Property," referring to the property the government seized "which I did not own – in the form of fiat monies, cryptocurrency, and precious metals – on behalf of clients who invested money through a company I owned called Personal Money Management Company." *United States v. $217,609.52 et al*, 22-cv-0283 JB (Doc. 4) at 4 (attached hereto as exhibit 3).[5] In light of those concessions, there is already a strong nexus between the precious metals seized and investor funds, showing that the precious metals seized are forfeitable fraud proceeds.

Second, the bank records, *e.g.*, Gov. Exs. 134-35, the tracing analyses of investor funds, *id.* 141-59,[6] and precious metal invoices introduced at trial, *id.* 119A-121A[7] solidify that nexus, showing (i) Lopez did use millions of investor funds to purchase millions of dollars of precious metals; and (ii) the type and amount of precious metals Lopez purchased with those funds is consistent with precious metals agents seized.

---

[5]Lopez also claimed a portion of the precious metals were his own lawful property. *Id.* A portion of the precious metals was subsequently (and before trial) returned to Lopez – approximately 8,500 Canadian silver maple leaves that the United States could not document with invoices. *See id.* (Doc. 27); *infra* Appendix A. Whether he will maintain that any additional precious metals seized are his own lawful property is not yet known.

[6]Given the volume of these exhibits, the United States does not attach them to its supplemental filing of trial exhibits, but can produce them upon request.

[7]*See supra* n.6.

For example, invoices showed that Lopez purchased at least 180,901 American Silver Eagles between and 2013-2021 and agents seized 178,984 American Silver Eagles at Lopez's home, office, and storage unit. *See* Gov. Ex. 122A (invoice summary chart); Gov. 171 (documenting the number and type of precious metals seized); *infra*, Appendix A. Similarly, invoices documented Lopez purchased approximately 2,292 American Gold Eagles between 2013-2021 and agents seized 2,226 American Gold Eagles at Lopez's home, office, and storage unit. *Id.*

The list goes on. Invoices documented 500 1 oz. silver Vienna Philharmonic coins purchased and agents seized 500 of the same coin; invoices documented 30 1 ounce gold South African Krugerrand coins and agents seized 30 of the same coin. *Id.* This evidence is not a coincidence; it is a nexus between that which Lopez purchased and that which agents seized. Accordingly, the Court should order forfeited every coin seized that is documented as a purchase by an invoice. *See infra* at 19, Appendix A (documenting invoiced and seized coins).

As Appendix A shows, there are also approximately 196 gold coins seized and some bags of silver dimes and quarters which were not specifically itemized in the invoices recovered ("un-invoiced coins"),[8] but those coins are still forfeitable. For example, agents seized five gold 100 EUR Austrian Mint Vienna Philharmonics and there is no invoice using that precise terminology to document a purchase of an "Austrian Mint Vienna Philharmonic." Nevertheless, there is still a nexus between those coins and investor funds such that the Court can conclude by a preponderance of the evidence that they are proceeds of the fraud.

First, the un-invoiced coins were found in the same location that Lopez stored other proceeds of fraud. The Philharmonics, for instance, were found in a safe in Lopez's home, which also stored dozens of monster boxes of American Silver Eagles, which are proceeds of the fraud.

---

[8] *See infra*, at 15, and at 20, Appendix B for a listing of the un-invoiced coins.

14

*See* Gov. Ex. 247. The close proximity of these coins with other fraud proceeds breaks towards a nexus finding. *See United States v. Guzman-Cordoba*, 988 F.3d 391, 403 (7th Cir. 2021) (Location of $10,000 cash in a stash house with weapons, drugs, and other items related to drug trade, created a nexus between the cash and the crime, despite defendant claims that the cash had a legitimate source); *United States v. Burton*, 722 F. App'x 677 (9th Cir. 2018) (similar conclusion). As shown in the table below all of the un-invoiced coins were found in close proximity to other fraud proceeds:

| Investigator Category | Amount un-invoiced | Location found |
|---|---|---|
| Gold - $50 American Gold Buffalo | 20 | PMMCO office safe. *See* Gov. Exs. 233, 239 |
| Silver – 90% bag of silver dimes | 8,409 | PMMCO office safe and Lopez home garage safe. Gov. Exs. 233 & 248 |
| Silver – 90% bag of silver quarters | 4,016 | *Id.* |
| Gold - $5 U.S. Mint Commemorative | 122 | PMMCO office safe. Gov. Ex. 233 |
| Gold - $25 American Gold Eagle Proof | 23 | Lopez's home garage and basement safes. *See* Gov exs. 244, 248. |
| Gold - $10 U.S. Mint First Spouse | 12 | Lopez's home garage safe. *See* Gov. Ex.247 |
| Gold - 1 t oz Gold Bar | 2 | *Id.* |
| Gold - 100 EUR Austrian Mint Vienna Philharmonic | 5 | *Id.* |
| Gold - $10 American Gold Eagle | 4 | Lopez's home basement safe. *See* Gov. Ex. 244 |
| Gold - Australian AU$100 Kangaroo | 3 | Lopez's home garage safe. *See* Gov. Ex.247 |
| Gold - Perth Mint AU$100 Gold Nugget | 2 | *Id.* |
| Gold - South African Krugerrand .5 t oz | 2 | *Id.* |
| Gold - 1 t oz American Gold Buffalo Proof | 1 | *Id.* |

Second, while there are no invoices with, for example, the precise words "Austrian Mint Vienna Philharmonic," the invoices do document 331 items of unspecified gold bullion and approximately 125 items of unspecified gold proofs.[9] *See* Gov. Ex. 122A at 4-5, 7, 11. The 125

---

[9] Proofs are, essentially, a type of collectible or numismatic coin.

15

gold proofs more-than account for the un-invoiced 23 American gold eagle proofs and the 1 American gold buffalo proof. By the same analysis, the 331-invoiced gold bullion items cover the remaining 172 gold coins. For these reasons, there is a sufficient nexus to these gold coins to order them forfeited.[10]

For the foregoing reasons, the Court should order the above-referenced precious metals, *see supra* at 1-3, forfeited.

> 2. The $217,609.52 seized from Wells Fargo Account ending in 8961 are proceeds.

The $217,609.52 seized from Wells Fargo account ending in 8961 are directly attributable to investor funds deposited into the account in the month preceding the seizure. In addition, Lopez has, elsewhere, admitted, that such funds are investor moneys. *See* Exhibit 3 attached hereto *United States v. $217,609.52 et al*, 22-cv-0283 JB (Doc. 4) at 4. Accordingly, as investor funds, the $217,609.52 are proceeds of the fraud so are forfeitable.

> 3. The $95,731.81 seized from Wells Fargo Account ending in 5813 are proceeds.

The $95,731.81 seized from Wells Fargo Account ending in 5813 are attributable to investor funds directly deposited into the account in the month preceding the seizure and indirectly attributable to investor funds coming from Lopez's personal Charles Schwab account. In addition, Lopez has, elsewhere, admitted, that such funds are investor moneys. *See* Exhibit 3 attached hereto *United States v. $217,609.52 et al*, 22-cv-0283 JB (Doc. 4) at 4. As investor funds, the $95,731.81 are proceeds of the fraud so are forfeitable.

---

[10] Though the un-invoiced silver dimes and quarters are not accounted for in unspecified silver invoices, their location in the same safes as other fraud proceeds is sufficient to show by a preponderance of the evidence that they, like the bullion around them, are fraud proceeds.

      4.      <u>The 6.07455000 units of Bitcoin and 3.993 units of Ethereum cryptocurrency was purchased with investor funds, so is forfeitable.</u>

The cryptocurrency seized was purchased with investor funds. *See* Gov. Ex. 153 & 155 (tracking investor funds to cryptocurrency purchases). In addition, Lopez has, elsewhere, admitted, that such funds are investor moneys. *See* Exhibit 3 attached hereto *United States v. $217,609.52 et al*, 22-cv-0283 JB (Doc. 4) at 4. As investor funds, cryptocurrency seized are proceeds of the fraud so are forfeitable.

      5.      <u>The $59,300 U.S. currency are investor funds, so are forfeitable.</u>

The $59,300 seized from PMMCO's office,[11] is investor funds so is forfeitable. First, Lopez has admitted the currency seized were investor funds. *See* Exhibit 3 attached hereto *United States v. $217,609.52 et al*, 22-cv-0283 JB (Doc. 4) at 4. Second, the currency seized, was found in locations proximate to other fraud proceeds, *e.g.*, in Lopez's PMMCO office safe with investors' precious metals *See* Gov. Ex. 233. Finally, there was a document entitled "safe inventory cash" found during the execution of the search warrant listing client names as a partial source of funds, and the other source as a repayment of a loan by precious metal dealer, David Tackett – who testified at trial and was the owner of American Bullion and Coin. *See* Exhibit 4 attached hereto. The original source of the loan to Mr. Tackett was from investor funds and therefore the repayment is traceable to investor money, e.g., fraud proceeds. The Court should, accordingly, order this currency forfeited.

## CONCLUSION

For the foregoing reasons, the Court should enter a money judgment of $24,109,203.20 and forfeit all of the specific property listed above, *supra* at 1-3.

---

[11] There was additional currency seized at Lopez's home but was returned to Lopez.

        Respectfully submitted,

        ALEXANDER M.M. UBALLEZ
        United States Attorney

        *Electronically filed on October 24, 2024*
        FREDERICK MENDENHALL
        FRED FEDERICI
        Assistant United States Attorney
        P.O. Box 607
        Albuquerque, New Mexico 87103
        (505) 346-7274

I hereby certify that on October 24, 2024, I filed the foregoing electronically through the CM/ECF System, which caused counsel for the Defendant to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.


*/s/*
FREDERICK MENDENHALL
Assistant United States Attorney

# APPENDIX A
(invoiced coins with quantity seized)

| Investigator Category | Quantity on invoices | Quantity seized |
|---|---|---|
| Silver - 1 t oz American Silver Eagle | 180,901 | 178,984 |
| Silver - 1 t oz Canadian Silver Maple Leaf | 19,100 | 27,527 |
| Gold - 1 t oz American Gold Eagle | 2,292 | 2,226 |
| Silver - Austrian Mint Vienna Philharmonic | 500 | 500 |
| Gold - $50 American Gold Buffalo | 216 | 236 |
| Gold - U.S. $20 Liberty/ Double Eagle[a] | 871 | 355 |
| Silver – 90% bag of silver dimes | 10,000 | 18,409 |
| Silver – 90% bag of silver quarters | 1000 | 5,016 |
| Gold - $5 U.S. Mint Commemorative | 0 | 122 |
| Silver - 10 t oz Silver Bar | 2,200 | 97 |
| Gold - $50 American Gold Eagle Proof | 194 | 54 |
| Gold - 1 t oz Canadian Gold Maple Leaf | 684 | 34 |
| Gold - South African Krugerrand 1 t oz | 30 | 30 |
| Gold - $25 American Gold Eagle Proof[b] | 4 | 27 |
| Gold - $10 U.S. Mint First Spouse | 0 | 12 |
| Gold - $25 American Gold Eagle[c] | 14 | 11 |
| Gold - $5 American Gold Eagle Proof[d] | 59 | 10 |
| Gold - $10 American Gold Eagle Proof[e] | 37 | 9 |
| Gold - 1 t oz Gold Bar | 3 | 5 |
| Gold - 100 EUR Austrian Mint Vienna Philharmonic | 0 | 5 |
| Silver - 100 t oz Silver Bar | 6 | 5 |
| Gold - $10 American Gold Eagle | 0 | 4 |
| Gold - Australian AU$100 Kangaroo | 0 | 3 |
| Gold - Perth Mint AU$100 Gold Nugget | 0 | 2 |
| Gold - South African Krugerrand .5 t oz | 0 | 2 |
| Gold - 1 t oz American Gold Buffalo Proof | 0 | 1 |
| Gold - U.S. Kennedy Half Dollar Proof | 3 | 1 |

Sources: Gov. Ex. 122A & 171.

[a] Liberty and Liberty Double Eagle are synonymous, as are Liberty Double Eagle and St. Gaudens.  Liberties are listed in different rows on Exhibit 122A and the total here reflects the sum of all the liberties listed.
[b] Identified on Exhibit 122A as ½ t oz Proof American Gold Eagle.  1 troy ounce of gold has a face value of $50, ½ troy ounce of gold has a face value of $25, ¼ troy ounce of gold has a face value of $10, and 1/10 troy ounce of gold has a face value of $5.
[c] Identified on Exhibit 122A as ½ t oz Gold.
[d] Identified on Exhibit 122A as Gold 1/10 t oz proof 1/10 t oz Proof American Gold Eagle
[e] Identified on Exhibit 122A as gold ¼ t oz proof.

# APPENDIX B
("un-invoiced coins")

| Investigator Category | Amount un-invoiced |
|---|---:|
| Gold - $50 American Gold Buffalo | 20 |
| Silver – 90% bag of silver dimes | 8,409 |
| Silver – 90% bag of silver quarters | 4,016 |
| Gold - $5 U.S. Mint Commemorative | 122 |
| Gold - $25 American Gold Eagle Proof | 23 |
| Gold - $10 U.S. Mint First Spouse | 12 |
| Gold - 1 t oz Gold Bar | 2 |
| Gold - 100 EUR Austrian Mint Vienna Philharmonic | 5 |
| Gold - $10 American Gold Eagle | 4 |
| Gold - Australian AU$100 Kangaroo | 3 |
| Gold - Perth Mint AU$100 Gold Nugget | 2 |
| Gold - South African Krugerrand .5 t oz | 2 |
| Gold - 1 t oz American Gold Buffalo Proof | 1 |