IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 22-cr-2053 MLG |
| ) | |
| **JOHN LOPEZ,** ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

Pursuant to Local Rule the United States respectfully files these objections to the presentence investigation report. Doc. 144 ("PSR"); D.N.M. L.R. 32C.

In sum, the United States respectfully requests the Court: (i) assess a 4-point offense-level increase pursuant to U.S.S.G. § 2B1.1(b)(20); (ii) order restitution for victims who had their checks signed over to Route 66 Coin and Collectibles; (iii) order prejudgment interest to the restitution amount; and (iv) order the PSR to be clarified or amended as specified below.

### BACKGROUND

The Defendant John Lopez was found guilty by a jury of over two dozen counts of mail and wire fraud in addition to two counts of money laundering. Doc. 123. His scheme to defraud entailed holding himself out as an investment advisor and falsely claiming to potential clients – many of whom were nearing retirement -- that he had a history of success in beating the stock market.

As the evidence at trial showed, however, Lopez's entire investment company was a sham and a ponzi scheme. Many people nevertheless believed Lopez's lies and transferred money to

him.  In so doing, several sold existing investments in the stock market or other securities and sent their money to Lopez.  *See*, *e.g.*, PSR ¶ 21 at 10; Doc. 151 at 13-32 (victim statement about transfer out of 401K with accompanying 401K documents showing stocks invested in); Doc. 156 at 25, 31 (victim statement concerning rolling over 401K and 401K documents showing investments in stocks).  For some clients, to accept their retirement rollovers Lopez would even sign paperwork on the 401K transfer prior to the transfer.  *See, e.g.*, Exhibit 3[1] at 4.

Lopez did not just "manage" his clients funds, however.  He also gave them investment advice, often in a monthly newsletter.  In his January 2020 newsletter, for example he advised his clients that there was "risk" in staying "invested in Fidelity's Stable Value Fund" because of "overnight lending market" issues.  Exhibit 4 at 4.  In April of that same year, he advised his clients to "look for the safest fund available in your 401(k) program and park your money there" during a stock market decline caused by the covid pandemic.  *Id.* at 8.  Sometimes he would get specific – even describing a particular fund in which to invest: "For government workers who participate in the TSP program, Fund G is the safest of the investment options available."  *Id.* at 9; *see also id.* at 13 ("As previously mentioned, my recommendation of The Stable Value fund or equivalent [] short term US treasury Bond Fund might be the least painful choices to cope with the commencing downturn.").

He would also give personal investment advice if clients asked.  Jay Bailey, for example, an investor who testified at trial, sought out investment advice on investment options with Vanguard, to which Lopez promptly responded "Yes, assuming nothing has changed with the

---

[1] Exhibit numbers refer to cmecf document attached hereto with the corresponding number.  Thus, Exhibit 3 is Doc. No. XX-3.

401(k) investment choices, the Vanguard Cash Reserves Federal Money Market shares or the Vanguard Retirement Savings Trust III are still the best choice." Exhibit 5 at 1.

On April 4, the United States Probation Office filed its Presentence Investigation Report. Doc. 144. It concluded that Mr. Lopez's offense level was 40 with a criminal history category of I. PSR ¶ 78 at 23. It did not, however, assess a four-level increase pursuant to U.S.S.G. § 2B1.1(b)(20), which applies where, as here, the defendant acts as an investment advisor and violates the securities laws. For the reasons that follow the United States respectfully objects to that omission. It also requests an amendment to the restitution amount awarded and other factual details within the PSR as listed below.

## ARGUMENT

I.   **THE COURT SHOULD INCREASE LOPEZ'S OFFENSE LEVEL BY 4 BECAUSE THE OFFENSE INVOLVED A VIOLATION OF SECURITIES LAW AND LOPEZ WAS AN INVESTMENT ADVISER.**

The offense involved Lopez acting as an investor advisor and violating the securities laws by committing fraud knowing or by reasonably foreseeing that his clients would sell securities (stocks in their retirement funds) and transferring that money to him. On those facts, the Court should assess a four-level increase under U.S.S.G. § 2B1.1(b)(20).

That provision provides, in relevant part, "if the offense involves—(A) a violation of securities law and, at the time of the offense the defendant was . . . (iii) an investment advisor. . . increase by **4** levels." U.S.S.G. § 2B1.1(B)(20). For the reasons that follow, Lopez violated the securities laws and acted as an investment advisor, and, accordingly, that offense-level increase should apply.

### A.  Lopez's offense involved a violation of the securities laws.

Lopez's fraud was connected with the sale of securities, and thus was a violation of the securities laws. For purposes of this subsection of the Guidelines, "securities law" means "18 U.S.C. §§ 1348, 1350, . . . 15 U.S.C. § 78c(a)(47)," and "includes the rules, regulations, and orders issued by the Securities and Exchange Commission pursuant to the provision of law referred to in such section." U.S.S.G. § 2B1.1 App. N. 16(A).  Of note, "a conviction under a securities law . . . is not required in order for subsection (b)(20) to apply." U.S.S.G. § 2B1.1 App N. 16(B).  The subsection would apply where, as here, "in the case of a defendant convicted under a general fraud statute if the defendant's conduct violated a securities law." *Id.*

Lopez's offense conduct violated a securities law as a violation of 18 U.S.C. § 1348(2) Under 18 U.S.C. § 1348(2), whoever "knowingly executes, or attempts to execute, a scheme or artifice— . . . (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of . . . any security" regulated by the Securities and Exchange Act of 1934 is guilty of securities fraud.  To prove such a violation, the United States must show the defendant

> (1) knowingly executed or attempted to execute a scheme or plan to defraud or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations or promises; (2) the statements made or facts omitted as part of the scheme were material; (3) [the defendant] acted with the intent to defraud; and (4) the scheme was in connection with the purchase or sale of securities.

*United States v. Hussain*, 972 F.3d 1138, 1146 (9th Cir. 2020) (cleaned up).  The elements of such charge, in short, generally track the wire and mail fraud statute elements but have the added requirement that the scheme was "in connection with" the purchase or sale of a securities or a commodity.  *See United States v. Hussain*, 972 F.3d 1138, 1146 (9th Cir. 2020); *see also United States v. Greenlaw*, 84 F.4th 325, 339 n.6 (5th Cir. 2023) (concluding Section 1348 borrows "key

4

concepts from the mail and wire fraud statutes"). Because Lopez was convicted of mail and wire fraud, should his scheme be "in connection with" a purchase or sale of securities he is also guilty of violating 18 U.S.C. § 1348.

As the case law on Section 1348 is sparse, at least one Circuit Court of Appeals has adopted the case law interpreting the same "in connection with" language from other securities regulations. *Hussain*, 972 F.3d at 1147[2]; *see also United States v. Mahaffy*, 2006 WL 2224518, at *12 (E.D.N.Y. 2006) ("[T]he requirement that the scheme be 'in connection' with a security is satisfied where as a result of the scheme, the defendants either benefitted, or attempted to benefit from trading in securities.") citing *United States O'Hagan*, 521 U.S. 642, 650-51 (construing "in connection with" language from other securities regulations). Based on that securities body of law, the "in connection with" language is "construed broadly not technically and restrictively." *Id.*; *see also S.E.C. v. Wolfson*, 539 F.3d 1249, 1262 (10th Cir. 2008) ("The Supreme Court has consistently embraced an expansive reading of § 10(b)'s 'in connection with' requirement."). Indeed, "it is enough" under that case law to satisfy the in-connection-with requirement should "the fraud alleged 'coincide' with a securities transaction." *Wolfson*, 539 F.3d at 1262 citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006); *see supra Mahaffy*, 2006 WL 2224518, at * 12 (element satisfied where defendant benefited or attempted to benefit "from trading in securities").

Lopez's scheme meets that capacious "in connection with" the purchase or sale of a securities requirement. His fraud "coincides" with securities transactions as he knew (or reasonably should have known) that his clients would sell securities to transfer him the money that

---

[2]The United States could find no other Circuit Court of Appeals case interpreting the "in connection with" requirement of Section 1348.

was the object of the scheme. Indeed, he instructed several victims over the years to rollover their retirement accounts to him, which entailed selling securities in their retirement accounts and transferring the money to Lopez. *See* PSR ¶ 21, at 10; *see also, e.g.*, Exhibit 29 (admitted at trial detailing a victim's 401K investments in stocks prior to transfer); Doc. 151 at 13-32 (victim statement about transfer out of 401K with accompanying 401K documents showing stocks invested in); Doc. 156 at 25, 31 (victim statement concerning rolling over 401K and 401K documents showing investments in stocks). Sometimes he even signed for the transfers. Exhibit 3 at 4. That conduct satisfies the in-connection-with requirement, and Lopez should be found to have violated "securities law" as defined in U.S.S.G. § 2B1.1(B)(20).

      **B.**     **Lopez was an investment advisor**.

John Lopez served as an investment advisor. An investment advisor under this provision of the Guidelines is, as relevant here:

> any person who, for compensation, engages in the business of advising others, directly or through publications or writings as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.

15 U.S.C. § 80b-2(a)(11); U.S.S.G. § 2B1.1 App. N. 16(A) (directing that investment advisor has the meaning contained within 15 U.S.C. § 80b-2(a)(11)). He need not be licensed as an investment advisor for this definition to apply. *United States v. Elia*, 579 F. App'x 752, 754-56 (11th Cir. 2014).

Here, Lopez served in this investment advisory capacity. First, he held himself out as one. The first thing on his business card is "investments" followed by "financial planning" and "retirement planning." Exhibit 2. All of these words signal that he gives advice on investments. Second, through periodic emails to his clients, he advised them "through writings as to the advisability of investing in, purchasing or selling securities." 15 U.S.C. § 80b-2(a)(11); *see* Exhibit

4. As described *supra* at 2-3, Lopez told clients what investments were safe, what were not, where they should move their funds, and what the markets were doing. When individual clients asked about particular investments, he gave them his advice on what to do. Exhibit 5. In short, Lopez did all the things an investment advisor does.

Second, he did so for compensation. As a general matter, he paid himself with client funds as proven trial. He also alerted clients through his client contracts that he'd be taking fees for services rendered. Exhibit 1 at 2. Lopez is accordingly, an investment advisor.

Because of that, the United States respectfully requests that the Court assess a four-level enhancement to his offense level under U.S.S.G. § 2B1.1(b)(20).

## II.     THE COURT SHOULD ADD VICTIMS WHO HAD THEIR CHECKS SIGNED OVER TO ROUTE 66 TO THE RESTITUTION ORDER AND SHOULD ASSESS PREJUDGMENT INTEREST TO THE RESTITUTION AWARD.

The United States respectfully requests that restitution be amended in two ways (A) that the list add victims who had their checks directly signed over to Route 66 and the corresponding amounts as detailed in Doc. 168 at 33; and (B) that the restitution award include prejudgment interest.

### A.     The Court should add victims who had their checks signed over to Route 66.

Consistent with the Court's preliminary order of forfeiture, Doc. 171, 18 U.S.C. § 3663A(a)(2) (defining restitution victim), and 18 U.S.C. § 3663A(b)(1) (outlining the amount to be ordered), the United States respectfully request that the PSR be amended to add John Lopez's victims who had their checks signed over to Route 66 and add the amounts to the award. That list is contained at Doc. 168 at 33.

### B.     The Court should assess prejudgment interest to the restitution award.

Consistent with Tenth Circuit law, prejudgment interest should be added to the restitution award. *United States v. Patty*, 992 F.2d 1045, 1050 (10th Cir. 1993) ("We hold that prejudgment

interest is properly included in a VWPA award."); *see also United States v. Qurashi*, 634 F.3d 699, 704 (2d Cir. 2011) ("We hold that the MVRA allows a sentencing court to award prejudgment interest in a criminal restitution order to ensure compensation 'in the full amount of each victim's losses.'" citing 18 U.S.C. § 3664(f)(1)(A) and collecting other circuit courts who have so ruled).

Prejudgment interest is appropriate as it reflects the victim's *true* loss. Because of the fraud, the victim is unable to use his "money for a productive purpose," and prejudgment interest "is therefore necessary to make the victim whole." *Patty*, 992 F.2d at 1050; *see also United States v. Fumo*, 655 F.3d 288, 321 (3d Cir. 2011) ("And in order to make a victim whole, a prejudgment interest may be necessary to allow an injured party to recoup the time-value of his loss.") (internal citation omitted).

Here, during the fraud and the pendency of the case, the victims were unable to use their money productively in a true retirement or investment account and have lost out on the time-value of their money. To make them truly whole the Court should impose prejudgment interest. The United States proposes an interest rate consistent with that of the return on the stock market (S&P 500) during the time in which the victim had invested with Lopez or an interest consistent with that of the precious metals purchased during that same time period. While the United States acknowledges that either interest rate is imperfect as it is impossible to know precisely how each individual victim among over hundred would have invested their money had they never met John Lopez, the Court is empowered to "resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss." *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009) (emphasis omitted). Pegging an interest rate to a benchmark like the S&P 500 or gold and silver (given the facts of this case) is appropriate here, as it has an eye towards fairness and is

rooted in calculation of their actual loss. It would be unfair for victims to not, at the very least, be awarded the interest from the gold and silver that their money was used to purchase. The Court accordingly should so order.

### III. The United States requests the PSR is amended or clarified in the following ways listed.

- **PSR paragraph 4.** The United States respectfully requests that paragraph 4 of the PSR be amended to add that (i) on November 9, 2023, Judge Robbenhaar concluded that John Lopez violated his conditions of release; and (ii) on March 4, 2024, Judge Robbenhaar again concluded that John Lopez violated his conditions of release.

- **PSR paragraph 12 & 18.** The United States respectfully requests that paragraph 12 and 18 be amended to reflect that Lopez defrauded investors $24,065,636.20 so that it is consistent with the Court conclusion in its preliminary order of forfeiture. Doc. 171 at 2. This conclusion should not affect the advisory guideline range.

- **PSR paragraph 53.** The United States requests clarification whether the medical records in probation's possession corroborate the defendant's report to probation that he has a "transient ischemic stroke history."

- **PSR paragraph 54**. The United States requests clarification whether the medical records in probation's possession corroborate the defendant's report to probation that, "in 2024 he underwent cardiac surgery."

- **PSR paragraph 72.** The United States requests that an approximate $3.5 million of American Silver Eagles be added to the assets listed in paragraph 72, or accounted for in some of fashion within the PSR, as the United States has presented evidence that Lopez purchased that approximate amount of silver that was not seized by authorities. Lopez has presented no accounting of those assets. Without an accounting from him which details where those assets went, those assets should be listed. The United States also requests clarification about what the liability is underlying the three listed "other liability type" in this paragraph. Specifically, the $45,000 U.S. Bank "other liability type," the $15,185 Wells Fargo "other liability type," and the $60,000 Wells Fargo "other liability type."

- **PSR paragraph 73**. The United States respectfully requests that the statement Lopez forfeited "$8,500 in coins" for legal costs be amended to reflect that he forfeited "8,500 Canadian Maple Leaf minted 1-ounce silver coins" for legal costs. *See* 22-cv-0283, DNM (Doc. 23) at 2. The value of those coins is significantly higher than $8,500.

9

- **PSR paragraph 76.** The United States respectfully objects to the conclusion that Mr. Lopez cannot afford a fine unless and until there can be an honest accounting of assets in Lopez's possession to include the $3.5 million dollars-worth of silver he has omitted from his balance sheet.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests (i) a +4-enhancement assessed under U.S.S.G. § 2B1.1(b)(20); (ii) victims and amounts specified above be added to the restitution amount; (iii) prejudgment interest added to the restitution award; and (iv) the foregoing factual issues identified above are amended, added, or clarified.

Respectfully submitted,

RYAN ELLISON
United States Attorney

*Electronically filed on April 25, 2025*
FREDERICK MENDENHALL
FRED FEDERICI
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I hereby certify that on April 25, 2025, I filed the foregoing electronically through the CM/ECF System, which caused counsel for the Defendant to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/*
FREDERICK MENDENHALL
Assistant United States Attorney